ANNA E. MOCK and Others, Appellants, *v.* BEATRICE P. GARSON and MOSES GARSON, as Administrators with the Will Annexed of LEANDER W. KAUFMAN, Deceased, and Others, Respondents.

*Will — burden of proof in an action to establish its invalidity — verdict sustaining it set aside only in an extreme case — proof that a testator observed the statutory requirements in executing a prior will — a subscribing witness may sign by making his mark or by having another person sign his name — positive proof, how far dispensed with.*

In an action brought under section 2653a of the Code of Civil Procedure to determine the validity or invalidity of the probate of a will, the onus of impeaching the validity of the will is upon the party asserting its invalidity.

In such an action it must be an extreme case which will justify the trial court in directing a verdict or granting a new trial where a verdict has been rendered against the party attacking the validity of the will.

Where the validity of a will drawn by the testator himself is attacked upon the ground that the statutory formalities were not complied with in its execution, evidence that the testator had executed another will a year or two prior to the execution of the instrument in question, and that he superintended the execution of such prior will and complied with all the statutory formalities, is competent.

A subscribing witness to a will may sign by making his mark or by procuring another person to sign his name for him in his presence.

When positive proof that the requirements relating to the execution of a will may be dispensed with, considered.

APPEAL by the plaintiffs, Anna E. Mock and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 7th day of March, 1901, upon the verdict of a jury, and also from an order entered in said clerk's office on the 2d day of March, 1901, denying the plaintiffs' motion for a new trial made upon the minutes.

After the appeal papers in this case were completed, one of the original defendants, Mary Elizabeth Kaufman, sued individually and as administratrix with the will annexed of Leander W. Kaufman, deceased, died, and by an order of the court Beatrice P. Garson and Moses Garson, as administrators, etc., of Leander W. Kaufman, were substituted in the place of said defendant as administratrix, and George H. Harris, as executor, etc., of Mary Elizabeth Kaufman, deceased, was substituted in place of said defendant individually.

*Louis E. Fuller,* for the appellants.

*Henry G. Danforth* and *Werner & Harris,* for the respondents.

SPRING, J.:

The alleged will of Leander W. Kaufman, deceased, a resident of the city of Rochester, was admitted to probate in the Surrogate's Court of Monroe county in proceedings had therefor on the 12th day of April, 1899. This action was commenced August 27, 1900, by the heirs at law of the said Kaufman to determine the invalidity of the said will pursuant to section 2653a of the Code of Civil Procedure. This section engrafted a new procedure on the practice for the determination of the validity of wills by action. As originally passed in 1892 (Laws of 1892, chap. 591), it was construed by reason of the peculiar phraseology used to confine the action to one in behalf of the validity or maintenance of the will. (*Lewis* v. *Cook,* 150 N. Y. 163.)

In 1897 (Laws of 1897, chaps. 104, 701), the section was amended permitting the action to be maintained by " any person interested as heir at law    *    *    *    or otherwise " to test " the validity or invalid-

ity of the probate thereof," by action in the Supreme Court. (*Reid* v. *Curtin*, 51 App. Div. 545.)

The section provides that the decree of the Surrogate's Court "admitting the will or codicil to probate shall be *prima facie* evidence of the due attestation, execution and validity of such will or codicil." The procedure on the trial is prescribed in the section, to the extent so far as pertinent here, that the party sustaining the will "shall offer the will in probate and rest" and thereupon the contestants take the case. The onus, therefore, of impeaching the validity of the will is cast upon the contestants. (*Dobie* v. *Armstrong*, 160 N. Y. 584, 590; *Hagan* v. *Sone*, 174 id. 317.)

Goodman, one of the subscribing witnesses, died before the will was proved in the Surrogate's Court. Upon that proceeding the other witness, Etz, testified to the due execution of the will, verifying the usual affidavit on such a hearing, and was also examined orally by the surrogate. Henry C. Albee, who had been engaged in a collecting business in Rochester, and knew both Kaufman and Goodman, executed two affidavits, the one certifying to the genuineness of the signature of Kaufman, the testator, and in the other to the genuineness of the signature of Goodman to the will. The will, decree and the affidavits mentioned upon which the probate was founded were received in evidence without objection and the effect of this evidence I will refer to later. Albee, who was produced by the plaintiffs on the trial, testified that the signature purporting to be that of Goodman was not genuine; that he did not read the affidavits verified by him in the Surrogate's Court, but afterwards ascertained their contents and apprised Mr. Werner, one of the counsel who had charge of the probate, that the signature was not that of Goodman and that he did not understand he had so stated in his affidavit. There is a sharp conflict between the witness and Werner on the main items embodied in Albee's story. Etz, who was also sworn on behalf of the plaintiffs, modified his testimony very materially from that given by him in the Surrogate's Court. This witness was an old man seventy-five years of age, in poor health, and it may be fairly stated from reading his testimony that he failed to recollect substantially what occurred at the time of the execution of the will in 1890. The instrument propounded it seems was drawn by Mr. Kaufman himself, and the evidence fur-

ther shows that he had previously drawn and attended to the execution of a will for himself, and at that time the formalities of the statute pertaining to the execution of wills were complied with under his directions. The will itself contains inherent evidence that Mr. Kaufman was a man of intelligence. Etz several times declined to state positively that Mr. Kaufman did not state that the instrument was his last will and testament and that he did not request the witness and Goodman to sign it as subscribing witnesses. The farthest the witness could be prevailed upon to go was that he had no distinct recollection on that subject. He further stated that when he testified before the surrogate his "recollection and health were better than they are to-day," and that he then testified to the truth. He further stated that it was "his best recollection at the time that Daniel Goodman signed his name himself." This witness' examination was considerably prolonged, but when sifted down all it amounts to is that he has no definite recollection of all that occurred at the time the will was executed. Two witnesses, one a teller in a bank in Rochester, and the other long employed in examining signatures in the Commercial Bank, testified on a comparison of the purported signature of Goodman with his genuine signatures identified and produced upon the trial that the signature to the will was not that of Goodman, but was made by the person who wrote the name of Etz as subscribing witness. Etz himself testified on this subject that while he had supposed the signature had been actually written by Goodman, yet an examination of it led him to believe that he wrote it. While an inspection of the signatures might lead to the conclusion that Goodman did not in fact sign his name to the will, yet the exhibits upon which the experts relied were produced in evidence and were subject to the inspection of the jury, and that evidence with the other testimony made a question of fact for them to pass upon. As I have stated, the testimony given by Albee and Etz in the Surrogate's Court was received in evidence. The section of the Code referred to seems to contemplate that only the will of the testator with the decree admitting it to probate shall be received in evidence and that constitutes the *prima facie* case of the proponents. (*Hagan* v. *Sone*, *supra*.) The affidavits of Etz and Albee were, however, admitted without objection and are entitled to full significance as original

evidence. They show clearly a due execution of the will, and their effect is not so outweighed by the contradictory testimony of these witnesses on the trial and that of the experts as to require the direction of a verdict for the plaintiffs or the granting of a new trial on the minutes of the court. Again, as already stated, it is to be noted that Kaufman himself was familiar with the execution of wills, and that is a circumstance of considerable value in view of the fact that eleven years elapsed between the time the instrument propounded was executed and the trial of this action in the Supreme Court. A trial before a jury was evidently designed by this section of the Code, and it must be an extreme case in order to justify a trial court in directing a verdict or granting a new trial for the plaintiffs who are endeavoring to establish the invalidity of the probate. (*Hagan* v. *Sone, supra.*)

The trial proceeded very largely upon the assumption that it was necessary for Goodman personally to sign his name as a subscribing witness to the will. If the signature had, in fact, been made by Etz at the direction of Goodman and in his presence with the usual request and declaration of the testator that would be a sufficient compliance with the statute. A subscribing witness may sign by mark or by another person, the same as the testator himself. (Jessup's Surr. Pr. 378; Redf. Law & Prac. Surr. Ct. [3d ed.] 169; *Lord* v. *Lord*, 58 N. H. 7.) Etz was questioned, however, on this subject and testified on the direct examination: " I remember Mr. Kaufman's dictating Mr. Goodman's address to whoever wrote the name there. If I wrote the name there he must have dictated it to me. I remember his dictating Goodman's address to the man who wrote Goodman's name." On cross-examination he testified in effect that he was unable to state whether Goodman asked him to sign the will for him or not. If Etz, which seems probable, wrote Goodman's name in the latter's presence, either at the request of Goodman or of the testator in the presence of Goodman, this would be a sufficient subscription by Goodman to the will, assuming the other necessary formalities were complied with.

Where there is no question of mental incapacity or of undue influence, and the person supervising the execution of the will is familiar with the requirements of the statute pertaining to such execution, and a long time has gone by since the transaction and

the witnesses do not appreciate just what each step in these require- ments signifies, and their testimony at most is an absence of recol- lection as to some of the features, rigid, explicit proof may not be required. A substantial compliance with the requisites attending execution must be adhered to, but the desire to carry out the wishes of a competent testator often induces the courts to abate somewhat from positive proof in such a case where the inference is fairly deducible that the will was duly executed, but the subscribing wit- nesses, by reason of a failure of recollection, do not explicitly testify in full measure to every detail.

There are many exceptions taken by the counsel for the appel- lants to the reception of evidence and also to the refusals to charge. It is urged quite strenuously that the evidence given by Etz on cross-examination to the effect that he believed this was the will of Kaufman when he signed it, was improper. The examination on this subject of the witness' belief and impression is carried along to undue length by the cross-examiner, but I do not see how the appellants' counsel can complain because he set on foot this method of examination. Etz was asked on direct examination if he recalled "suspecting what the paper was at the time you signed it," which he answered in detail. Again, his affidavit was received in evidence at the instance of the plaintiffs in which he stated that he suspected that this was the will of Kaufman. This opened the door for the defendants to pursue the subject at any reasonable length permit- ted by the court. We think the evidence that Kaufman had executed another will a year or two before is competent, accom- panied as it was with proof that he superintended the execution of that will and complied with the formalities of the statute. There were several exceptions to the charge taken by the counsel for the appellants which may have constituted reversible error, except for the fact that they were subsequently cured by the court. He finally did submit to the jury pointedly whether each requirement of the statute had been complied with instead of limiting it to the ques- tion pertaining to the signature of Goodman.

The judgment and order are affirmed, with costs to the respondent.

All concurred.

Judgment and order affirmed, with costs.